**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARON MICHAELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20CV47 JCH |
| | ) | |
| SEDGWICK CLAIMS MANAGEMENT | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Sedgwick Claims Management Services, Inc. ("Sedgwick"), Ascension Long-Term Disability Plan ("LTD Plan"), and the Ascension Short-Term Disability Payroll Program's ("STD Program")[1] (collectively "Defendants") Motion for Summary Judgment, filed January 28, 2021, and Plaintiff Charon Michaels' Motion for Summary Judgment, filed January 27, 2021.  (ECF Nos. 44, 42).  The motions are fully briefed and ready for disposition.

## BACKGROUND[2]

At all relevant times Plaintiff Charon Michaels, a 65 year old woman, was employed as an administrative assistant and unit clerk at Providence Health Center ("Providence"), an Ascension health ministry.  (Defendants' Statement of Uncontroverted Material Facts in Support

---

1 According to Defendants, the Ascension Long-Term Disability Plan is improperly named in the Complaint as the Ascension Health Long-Term Disability Plan, and the Ascension Short-Term Disability Payroll Program is improperly named in the Complaint as the Ascension Health Short-Term Disability Plan.  (Defendants' Motion for Summary Judgment, P. 1 n. 1).

2 Portions of the Court's background section are taken from Defendants' Statement of Uncontroverted Material Facts in support of their Motion for Summary Judgment.  In contravention of this Court's Local Rule 4.01(E), Plaintiff failed specifically to controvert any of Defendants' Facts.  As a result, Plaintiff is deemed to have admitted all facts in Defendants' Statement of Uncontroverted Material Facts.  *See Turner v. Shinseki*, No. 4:08CV1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010).

of their Motion for Summary Judgment ("Defendants' Facts"), ¶¶ 8, 20-22, citing AH 165).[3]  In

that position, Plaintiff's responsibilities included composing communications, receiving visitors,

scheduling meetings and appointments, filing, admitting patients, and typing.  (*Id.*, ¶ 23, citing

AH 231-36).

Ascension Health Alliance d/b/a Ascension ("Ascension") was the sponsor and Program

Administrator for the STD Program available to eligible employees of Providence.  (Defendants'

Facts, ¶¶ 1-2, citing AH 9, 72).  Ascension delegated discretionary authority to make STD claims

determinations to Sedgwick, the Claims Administrator, as follows:

> **7.7    Authority, Duties, and Responsibilities of the Claims Administrator.**
> The Claims Administrator shall have the authority, duties, and responsibilities set
> forth in this Section 7.7.  The Claims Administrator shall have the discretionary
> authority to decide all questions arising in connection with matters set forth in this
> Section 7.7.  Any such decision by the Claims Administrator shall be conclusive
> and binding on all persons….Any interpretations or determinations made pursuant
> to such discretionary authority of the Claims Administrator shall be upheld in
> judicial review unless it is shown that the interpretation or determination was an
> abuse of discretion.
>
> The duties of the Claims Administrator shall include but not be limited to the
> following:
>
> > (a) determining whether a Participant is eligible to receive or to continue
> >      to receive a Benefit under the Program and to compute the amount of
> >      such Benefit;
> > (b) making all claims determinations;
> > ….
> > (f)    interpreting and construing all provisions of the Program while
> > carrying out the Claims Administrator's duties under this Section 7.7.

(*Id.*, ¶¶ 3-4, citing AH 24-25, 40-41).    Section 1.11 of the STD Program defines

Disability/Disabled as:

> Due to an Injury or Sickness which is supported by objective medical
> evidence,

---

3 Citations designated AH refer to the multi-volume administrative record filed with the Court
under seal on July 28, 2020.

(a) the Participant requires and is receiving from a Licensed Physician regular ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and

(b) either (1) or (2) below is satisfied:

(1) the Participant is unable to perform each of the Material Duties of the Participant's Regular Occupation, or

(2) while unable to perform each of the Material Duties of the Participant's Regular Occupation on a full-time basis and while eligible for Rehabilitative Employment,

(A) the Participant is performing at least one of the Material Duties of the Participant's Regular Occupation or any other work or service on a part-time or full-time basis; and

(B) the Participant's earnings from work, while Disabled, do not exceed 80% of the Participant's Basic Weekly Earnings.

(*Id.*, ¶ 5, quoting AH 7).  The STD Program requires the Participant to submit Proof satisfactory to the Claims Administrator to demonstrate the existence of a Disability, and Proof, in turn, means objective medical evidence which, in the discretion of the Claims Administrator, substantiates the existence of a Disability.  (*Id.*, ¶¶ 6-7, citing AH 13, 9).

Ascension also sponsors the self-funded LTD Plan[4] for eligible employees of Providence. (Defendants' Facts, ¶ 8, citing AH 79, 85, 106-07, 161).[5]  Ascension was also the Plan Administrator for the LTD Plan, but it delegated the discretionary authority with regard to claims determinations to Sedgwick, the Claims Administrator, providing as follows:

**2.8    Authority, Duties and Responsibilities of the Claims Administrator.**

The Claims Administrator shall have the authority, duties, and responsibilities set forth in this Section 2.8.  The Claims Administrator shall have the discretionary authority to decide all questions arising in connection with matters set forth in this Section 2.8.  Any such decision by the Claims Administrator shall be conclusive and binding on all persons….Any interpretations or determinations made pursuant

---

4 Ascension funds both the STD Program and the LTD Plan.  (*See* Defendants' Response to Plaintiff's Statement of Uncontroverted Material Facts ("Defendants' Response to Plaintiff's Facts"), ¶ 4).

5 The LTD Plan is an employee welfare benefits plan, governed by the Employee Retirement Income Security Act ("ERISA").  (Defendants' Facts, ¶ 9, citing AH 112).

to such discretionary authority of the Claims Administrator shall be upheld in judicial review unless it is shown that the interpretation or determination was an abuse of discretion.

The duties of the Claims Administrator shall include but not be limited to the following:

> (a) The Claims Administrator shall have discretionary authority to determine whether a Participant is eligible to receive or to continue to receive a Benefit under the Plan and to compute the amount of such Benefit.
> (b) The Claims Administrator shall have the discretionary authority to make all claims determinations in accordance with Sections 2.12 and 2.13 of this Plan.
> ….
> (f)   In carrying out its duties under this Section 2.8, the Claims Administrator shall have the discretionary authority to interpret and construe all provisions of the Plan.

(*Id.*, ¶¶ 10-12, citing AH 79, 85, 80, 90, 128, 137).   The LTD Plan's definition of

Disability/Disabled is similar to that of the STD Program, providing as follows:

> **Disability or Disabled** means that due to an Injury or Sickness which is supported by objective medical evidence,

> (a) the Participant requires and is receiving from a Licensed Physician regular, ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and
> (b) either (1) or (2) below is satisfied:

> (1) the Participant is unable to perform:
> (A)  during the first 24 months of Benefit payments or eligibility for Benefit payments, each of the Material Duties of the Participant's Regular Occupation; and
> (B)  After the first 24 months of Benefit payments or eligibility for Benefit payments, any work or service for which the Participant is reasonably qualified taking into consideration the Participant's training, education, experience and past earnings.
> (2) the Participant, while unable to perform each of the Material Duties of the Participant's Regular Occupation on a full-time basis, is
> (A)  performing at least one of the Material Duties of the Participant's Regular Occupation or any other work or service on a part-time or full-time basis; and
> (B)  the Participant's earnings from work while Disabled do not exceed 80% of the Participant's pre-Disability Basic Monthly Earnings.

- 4 -

(*Id.*, ¶ 14, quoting AH 80-81).  Section 4.13 of the LTD Plan explains that "a Disabled Participant must complete the Elimination Period before any Benefit is payable."  (*Id.*, ¶ 15, quoting AH 104).  The Elimination Period is specified in the Addendum, and Providence's Addendum states that the Elimination Period is 180 days.  (*Id.*, ¶¶ 17-18, citing AH 83, 161).[6]

Plaintiff stopped working on or around May 19, 2017.  (Defendants' Facts, ¶ 24, citing AH 165).  Plaintiff notified Sedgwick of her claim for STD benefits on May 26, 2017.  (*Id.*, ¶ 25, citing AH 165).  Her listed medical condition was "unknown"; she reported leg pain and lower back pain, as well as headaches.  (*Id.*, ¶ 26; AH 165).[7]  Later that month, Plaintiff sought medical intervention for  back pain that radiated into her lower extremities, and was ordered to obtain an MRI on her spine.  (Statement of Facts in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Facts"), ¶ 24, citing AH 254, 274).

In June of 2017, Plaintiff obtained an MRI on her spine, and was diagnosed with lumbago with sciatica, mechanical low back pain, sacroiliac joint pain, spinal stenosis of lumbar region, and chronic neck pain.  (Plaintiff's Facts, ¶ 25, citing AH 257, 277).  That same month, two of Plaintiff's physicians submitted attending physician statements to support her claim for STD benefits:  Dr. Samuel Ralston, Plaintiff's primary care physician, and Dr. Robert Thrift, her psychologist.  (Defendants' Facts, ¶ 29, citing AH 190-95).  In his statement Dr. Ralston asserted that Plaintiff was "unable to sit for long periods of time", due to "back pain radiating to legs." (Plaintiff's Facts, ¶ 26, citing AH 214-16).  According to Defendants, however, Dr. Ralston's statement was missing pages, including the page identifying him as Plaintiff's physician, and so

---

6 Providence's Plan Outline states that benefits begin on the 181st consecutive calendar day of Disability.  (Defendants' Facts, ¶ 19, citing AH 126).
7 According to Defendants, when she initiated her claim Plaintiff's primary complaints were depression and generalized anxiety, and neck and back pain that radiated down her legs and seemed to worsen with the stress she experienced at work.  (Defendants' Facts, ¶ 27, citing AH 165, 1035-48).

Sedgwick did not consider the report.  (Defendants' Facts, ¶¶ 30-31, citing AH 190-91, 207-08, 1029-32, 219).  Dr. Thrift did not include a date that Plaintiff's incapacity began, but opined that she would be incapacitated for approximately six weeks, listing August 1, 2017, as the end date. (*Id.*, ¶ 32, citing AH 193).  He stated that Plaintiff was unable to manage work stress and anxiety, and unable to concentrate and focus on job tasks.  (AH 193).  Dr. Thrift stated that Plaintiff reported physical pain related to stress and anxiety, and he diagnosed her with generalized anxiety disorder (as of May 30, 2017).  (AH 194).  He further indicated that Plaintiff's next appointment would be in July, 2017.  (*Id.*).  Sedgwick requested additional information about treatment from Dr. Thrift, stating that it required objective clinical information supporting Plaintiff's inability to return to work due to reduced function capacity.  (Defendants' Facts, ¶ 35, citing AH 197-200).  In response, Dr. Thrift provided the same report previously submitted. (AH 201-04).

In June, 2017, Plaintiff's treating physician ordered a second MRI on her cervical spine, due to neck pain.  (Plaintiff's Facts, ¶ 27, citing AH 279).  Plaintiff then was diagnosed with multilevel spondylosis, multilevel mild spinal canal narrowing, and neural foraminal narrowing. (*Id.*, ¶ 28, citing AH 281).

In a letter dated June 22, 2017, Sedgwick denied Plaintiff's claim for STD benefits, stating in relevant part as follows:

> After review of your Short-Term Disability (STD) claim, it has been determined that you do not qualify for STD benefits under your STD Plan, therefore your benefits are denied from **05/30/2017-Return to Work**.  This determination is based on the following Plan provision(s):
>
> *You are considered to be Disabled or to have a Disability if due to an Injury or Sickness that is supported by objective medical evidence, you require and are receiving the regular, ongoing medical care of a Licensed Physician and you are following the course of treatment recommended by the Licensed Physician.  In addition, one of the following is true:*

- 6 -

> *You are unable to perform each of the Material Duties of your Regular Occupation, or*
>
> *While unable to perform all of the Material Duties of your Regula Occupation on a full-time basis and while eligible for Rehabilitative Employment:*
> > *--You are performing at least one of the Material Duties of your Regular Occupation or any other work or service on a part- or full-time basis, and*
> > *--Your earnings from work, while Disabled, do not exceed 80% of your pre-disability Basic Weekly Earnings.*
>
> The determination to deny benefits is based on a review of medical documentation provided by Dr. Robert Thrift on June 15, 2017.  The information noted that you are currently out of work due to generalized anxiety disorder.  The information does not substantiate disability at this time as there are no specific *cognitive, emotional, or exam findings available for review.*  Associate's last office visit was May 30, 2017 and next office visit is not until July of 2017 which indicates a lack of condition severity.  Without clinical, diagnostic and treatment information allowing assessment of condition severity and progress a recommendation of disability is not substantiated at this time.

(AH 208).

Plaintiff appealed the denial of STD benefits on or about July 7, 2017.  (Defendants' Facts, ¶ 43, citing AH 219).  As part of her appeal, she submitted additional medical evidence from visits she had with several doctors.  (*Id.*, ¶ 44, citing AH 243-93).  Between May 30, 2017, and August 8, 2017, Plaintiff visited doctors for pain in her neck, legs and back, and was given a variety of diagnoses, including lumbar radiculopathy, lumbago with sciatica, mechanical low back pain, sacroiliac joint pain, spinal stenosis of lumbar region, lumbar spondylosis, cervical spondylosis, lumbar stenosis, and myofascial pain.  (*Id.*, ¶ 45, citing AH 254-56, 257-60, 271-75, 277-78, 282-84, 247-50, 288-91).  Plaintiff had two MRI of her spine, on June 7 and June 16, 2017, revealing no disc desiccation but disc narrowing at L4-5, spinal stenosis, mild narrowing of the canal at L3-4, and severe narrowing at L4-5.  (*Id.*, ¶ 46, citing AH 279-81).  In July, 2017, Plaintiff continued treatment and was recommended pain management, chiropractic and physical therapy.  (Plaintiff's Facts, ¶ 29, citing AH 287).

During an appointment with Dr. Ralston on August 8, 2017, Plaintiff reported back pain and depressive disorder. (Defendants' Facts, ¶ 47, citing AH 268-72). Dr. Thrift provided a one-page summary of Plaintiff's visits on March 1, 2016, May 12, 2016, May 30, 2017, July 7, 2017, and July 31, 2017. (AH 293). He opined that Plaintiff was very stressed from work, but that she was learning to appreciate and value herself. (*Id.*).

On August 16, 2017, Sedgwick provided Plaintiff's claim file to physician reviewers from Dane Street, which in turn remitted her medical records to three independent physician advisors for review, to opine whether the information substantiated a finding of disability. (Defendants' Facts, ¶ 50). Plaintiff's file was reviewed by Howard Grattan, M.D., board certified in physical medicine and rehabilitation and pain management, Manuel Melendez, M.D., board certified in psychiatry, and Michelle Park, M.D., board certified in internal medicine. (*Id.*, ¶¶ 51, 53, 56). Dr. Grattan reported that he attempted peer-to-peer discussions with Dr. Samuel Ralston, Dr. Brian O'Grady, Jared Collett, P.A. and Dr. Eliot Wickliff, but was unsuccessful. (AH 409). After summarizing Plaintiff's condition, her job duties, and the treatment she had received, Dr. Grattan concluded as follows:

> Based on the medical facts from the available records and claim documentation, from a physical medicine & rehabilitation/pain medicine perspective, the claimant does not have a functional impairment from 5/30/17 to the claimant's return to work date, that would affect her ability to perform the regular, unrestricted duties of her occupation.
>
> The claimant was evaluated and treated for low back pain radiating to the left lower extremity with complaints of severely limited ability to perform daily activities, including work. The claimant noted her pain worsens with work-related stress. The physical examination findings include a normal gait, tenderness throughout the low back and SI joints bilaterally, painful lumbar range of motion, and a positive straight leg raise test on the right. She has full strength, sensation, and normal reflexes. An MRI of the cervical spine revealed multilevel spondylotic changes with mild to moderate neural foraminal narrowing and mild spinal canal narrowing. An MRI of the lumbar spine reveals mild narrowing of the canal and diffuse disc bulging at L3-L4 and severe narrowing at L4-L5.

- 8 -

The reported diagnoses include lumbar radiculopathy and chronic neck pain with comorbid conditions of restless leg syndrome, temporomandibular joint disorders, anxiety, and depression.   Dr. Ralston is of the opinion the claimant is incapacitated from 5/26/17 through 9/1/17 as she is unable to sit for long periods of time.

From a physical medicine/rehabilitation and pain medicine perspective, the claimant would not be at an increased risk of further injury by performing her regular job duties.

The clinical findings lack any evidence of neurological compromise such as motor weakness, altered sensation, abnormal reflexes, balance/gait impairment, musculoskeletal abnormalities, or diagnostic pathology to support impairment. Therefore based on the medical facts from the available records and claim documentation, from a physical medicine & rehabilitation/pain medicine perspective, the claimant does not have a functional impairment from 5/30/17 to the claimant's return to work date, that would affect her ability to perform the regular, unrestricted duties of her occupation.

(AH 411-12).

Dr. Melendez reported attempting peer-to-peer discussions with Dr. Robert Thrift and Dr. Samuel Ralston, to no avail.  (AH 416).  After summarizing Plaintiff's condition, her job duties, and the treatment she had received, Dr. Melendez concluded as follows:

Based on the available information, clinical evidence does not support functional impairment for the time frame of 5/30/17 through the present.

On 5/30/17, Ralston treated claimant for nerve pain.  Depression was mentioned by history.  The claimant was seen in no distress.  On 6/6/17, the claimant was seen for an ER visit for sciatic left.  Discharged home good and stable with no mention to depression.  On 6/9/17, visit for back pain and was documented to be "healthy appearing".  No referral or change of psychotropic medications were made.

On 06/13/2017, Dr. Thrift completed an Attending Physician statement indicating the claimant was unable to focus on job tasks and that the physical ailments were secondary to stress and anxiety.  His request of about six weeks of leave was not based on evidence of observable mental dysfunctions, and mostly relied on self-endorsements.  Additionally no change of treatment or referral to a higher level of care was made.  These events cannot support significant mental impairment.

On 06/12/2017, Dr. Ralston noted lumbar radiculopathy and associated depression and restless leg.  No[] referral to psych or higher level of mental care were made.  On 06/14/2017, Robert Matlock, M.D. described claimant as Healthy appearing.

On 08/8/2017, Dr. Ralston noted the first report of undated initial psychiatric consultation. It was noted that most of serious symptoms of depression were absent. Hence, impairment due to moderate depression and problems at work, cannot be substantiated by the notes. Therefore, medical information does not substantiate functional impairment at the time of this report for the period under review (05/30/2017 through return to work).

(AH 419-20).

Finally, Dr. Park reported unsuccessful attempts at peer-to-peer discussions with Dr. Eliot Wickliff and Dr. Robert Thrift. (AH 427). Dr. Park successfully completed peer-to-peer discussions with Dr. Samuel Ralston, Dr. Brian O'Grady[8], and Cinnamon, an assistant in Dr. Christopher Matlock's office. (AH 426-28). Dr. Park summarized her discussion with Plaintiff's attending physicians as follows:

I spoke with Dr. Ralston, the claimant's primary care provider. He advised me that the claimant did report to him some heaviness in her legs with walking which he feels corresponds to the MRI findings. However, he advised me that her primary impairment is her report of pain. He states that he has no clinical findings which support a functional impairment but has relied on the claimant's self reported symptoms.

Cinnamon called from Dr. Matlock's office [] and stated that Dr. Matlock does not feel that the claimant is functionally impaired due to her restless legs syndrome.

(AH 428). After summarizing Plaintiff's condition, her job duties, and the treatment she had received, Dr. Park concluded as follows:

Based on the medical records available, from the perspective of internal medicine and from a cumulative perspective, the claimant has no functional impairment from 5/30/17 through return to work.

The claimant's diagnoses of claimed impairment are lumbar radiculopathy, restless legs syndrome, temporomandibular joint syndrome, depression, and generalized anxiety disorder.

Lumbar radiculopathy: There is no clinical evidence of lumbar radiculopathy. The claimant reports low back pain with radiation to the lower extremities.

---

8 Caitlin from Dr. O'Grady's office informed Dr. Park that their office had no comment on Plaintiff's disability status, as she was not a surgical patient. (AH 427).

However, MRI of the lumbar spine only shows spinal canal stenosis. The claimant's symptoms, however, are not consistent with the MRI findings. The claimant reports pain with sitting and laying down which is opposite of what is seen in lumbar spinal stenosis. Therefore, it is felt that the claimant's symptoms are due to spinal stenosis and there are no clinical findings to explain the claimant's symptoms.

I have reviewed the report of the physical medicine and rehabilitation physician reviewer, Dr. Grattan, who does not feel that there is any functional impairment from the perspective of physical medicine and rehabilitation.

Restless legs syndrome: The claimant reports a history of restless legs syndrome. There is no documentation provided to support this diagnosis. However, the claimant states she has had this condition for three years. In addition, it is also noted that the claimant began treatment of the condition with Neurontin and reports that this medication has been beneficial. Restless legs syndrome is a condition in which a patient feels an uncomfortable urge to move the legs, primarily with prolonged sitting or with laying down. This condition may exist on its own or may be secondary to other conditions. There is no documentation provided to support this diagnosis such as with a sleep study nor an evaluation to determine if the condition is due to an underlying cause. Restless legs syndrome is rarely, if ever, a condition which causes impairment. In this case there is no documentation provided to support an impairment due to this condition.

Temporomandibular joint syndrome: I am unable to find any clinical evidence to support this diagnosis. This condition rarely, if ever, causes impairment. There is no documentation provided to support any impairment due to temporomandibular joint syndrome.

The claimant reportedly has a past medical history significant for depression and general anxiety disorder. These conditions are outside my area of expertise.

According to the psychiatry physician reviewer, Dr. Melendez, the claimant has no functional impairment from a psychiatric perspective….

Therefore, in summary, there is no clinical evidence to support a functional impairment from an internal medicine or cumulative perspective.

(AH 430-31).

In a letter dated September 26, 2017, Sedgwick affirmed the denial of benefits for the period of May 30, 2017, to Plaintiff's return to work date. (AH 435-37). Specifically, Sedgwick stated that its medical file review, together with the independent reviews of Drs. Grattan, Melendez and Park, did not support Plaintiff's inability to perform her own job. (*Id.*).

On October 22, 2017, Plaintiff was awarded Social Security Disability Benefits. (Plaintiff's Facts, ¶ 10, citing AH 858).[9]  On May 3, 2018, Plaintiff's counsel initiated an LTD claim.  (Defendants' Facts, ¶ 69, citing AH 444-51).  The claim included the medical records previously submitted in connection with Plaintiff's STD claim, plus records from Plaintiff's dentist, Dr. Steven Cutbirth, indicating Plaintiff was diagnosed with TMJ in 2011 and received treatment as recently as April, 2016.  (*Id.*, ¶ 70, citing AH 452-529).  Sedgwick acknowledged receipt of Plaintiff's claim for LTD benefits on May 9, 2018.  (AH 531-32).  In a letter dated May 16, 2018, Sedgwick denied Plaintiff's LTD claim, stating in relevant part as follows:

> After receiving new information from you, our updated review of your claim for benefits under the Ascension Health Disability Plan is complete.  We determined that you do not qualify for Long Term Disability benefits and your claim is hereby denied from May 30, 2017 through return to work.  The following provision applies to your claim.
>
> Article 1.  Definitions
>
> **1.17  Elimination Period** means the number of consecutive calendar days of Disability before Benefits become payable under the Plan.  The Elimination Period is specified in the Adoption Agreement and begins on the first day of Disability.
>
> **Ascension Health Long Term Disability Plan (Amended and Restated as of January 1, 2014) as summarized in the Long Term Disability Plan, Summary Plan Description**
>
> **Elimination Period**  The number of consecutive calendar days of Disability before benefits become payable under the Plan.  Your Elimination Period is identified on the Plan Outline and begins on the first day of Disability.  Working a half day or more is considered a day of Active work.
>
> **Long Term Disability Plan, Summary Plan Description**
>
> **Article 4.  Benefits**
>
> **4.13  Accumulation of the Elimination Period.**

---

9 Plaintiff submitted evidence of her Social Security Disability Benefits award to Defendants on November 12, 2018, as part of the appeal of her long-term disability benefit denial.  (Defendants' Response to Plaintiff's Facts, ¶ 10, citing AH 858).

Under the terms of this Plan, a Disabled Participant must complete the Elimination Period before any Benefit is payable.   For the purpose of accumulating the Elimination Period, the following will be deemed to Apply:

> (a)  During the elimination period, a total disability that temporarily ceases for not more than thirty (30) days, whether consecutive or intermittent, will be considered continuous for the purpose of accumulating the elimination period.  Any days that the participant is not disabled will not be counted toward the elimination period.
>
> (b) If during the elimination period a participant becomes eligible for coverage or insurance under any other group long-term disability plan/policy, the terms of the above sub-paragraph shall not apply.

**Elimination Period**—Benefits begin on the 181st consecutive calendar day of disability.

> --Providence Health Center, Long Term Disability Plan Outline

You would have been eligible for benefits beginning November 26, 2017.  Since Short Term Disability benefits were not paid for 180 days, the elimination period was not satisfied and therefore your claim is denied from May 30, 2017 through return to work.

Based on this we must deny your claim.  This determination reflects an evaluation of claim facts and Plan provisions.  We reserve the right to make a determination of any additional information that may be submitted.

(AH 551-52).

Plaintiff appealed the denial of her LTD benefits on November 12, 2018.  (Plaintiff's Facts, ¶ 18, citing AH 707).  She submitted additional information in support of her claim, including medical records.  (*Id.*, ¶ 19, citing AH 707-23).  In a letter dated November 30, 2018, Sedgwick upheld the denial of Plaintiff's claim, stating in relevant part as follows:

We have completed our review of your client's claim and appeal of the decision to deny benefits for the period of May 30, 2017 to your client's return to work date under the Ascension Health Long-Term Disability (LTD) Plan.

The following Plan provision was taken into consideration:

Article 1.      Definitions

**1.17  Elimination Period** means the number of consecutive calendar days of Disability before Benefits become payable under the Plan.  The Elimination Period is specified in the Adoption Agreement and begins on the first day of Disability.

**Ascension Health Long Term Disability Plan (Amended and Restated as of January 1, 2014) as summarized in the Long Term Disability Plan, Summary Plan Description**

**Elimination Period**  The number of consecutive calendar days of Disability before benefits become payable under the Plan.  Your Elimination Period is identified on the Plan Outline and begins on the first day of Disability.  Working a half day or more is considered a day of Active Work.

**Long Term Disability Plan, Summary Plan Description**

**Article 4.     Benefits**

**4.13  Accumulation of the Elimination Period.**

Under the terms of this Plan, a Disabled Participant must complete the Elimination Period before any Benefit is payable.   For the purpose of accumulating the Elimination Period, the following will be deemed to Apply:

- During the elimination period, a total disability that temporarily ceases for not more than thirty (30) days, whether consecutive or intermittent, will be considered continuous for the purpose of accumulating the elimination period.  Any days that the participant is not disabled will not be counted toward the elimination period.
- If during the elimination period a participant becomes eligible for coverage or insurance under any other group long-term disability plan/policy, the terms of the above sub-paragraph shall not apply.

**Elimination Period**—Benefits begin on the 181st consecutive calendar day of disability.
                       --Providence Health Center, Long Term Disability Plan Outline

Your client would have been eligible for benefits beginning November 26, 2017. Since Short Term Disability benefits were not approved for 180 days, the elimination period was not satisfied and therefore your client's claim is denied from May 30, 2017 to your client's return to work date.

Based on the information provided, the decision is to uphold the denial of your client's claim is in accordance with the Plan.  Benefits will remain denied for the period beginning May 30, 2017 to your client's return to work date.

(AH 874-75).

Plaintiff filed her First Amended Complaint in this matter on February 21, 2020.  (ECF

No. 17).  As stated above, Defendants filed their Motion for Summary Judgment on January 28,

- 14 -

2021, and Plaintiff filed her Motion for Summary Judgment on January 27, 2021.  (ECF Nos. 44, 42).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247.  The nonmoving party may not rest upon mere allegations or denials of its pleadings.  *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255.  The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  *Id*. at 249.

## DISCUSSION

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under

the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan.'"

*Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. §

1132(a)(1)(B), *cert. denied*, 549 U.S. 887 (2006).  "The district court reviews de novo a denial of

benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe

uncertain terms or to make eligibility determinations, when review is for abuse of discretion."

*Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 628 (8th Cir.

2007) (emphasis in original) (citation omitted).

In the instant case, Plaintiff does not dispute that both the STD Program and the LTD

Plan afforded Sedgwick (through a grant of authority from Ascension) the discretionary authority

to determine eligibility for benefits and construe terms of the Plans.  (*See* Plaintiff's Response to

Defendants' Motion for Summary Judgment, P. 2).  The standard of review for this Court thus is

abuse of discretion.  *Leirer v. Proctor & Gamble Disability Benefit Plan*, 910 F.3d 392, 396 (8th

Cir. 2018).[10]

> Under the abuse of discretion standard, the proper inquiry is whether the plan
> administrator's decision was reasonable; *i.e.*, supported by substantial evidence.
> In considering the reasonableness of a plan administrator's fact-based disability
> determination, courts should consider whether the decision is supported by
> substantial evidence.  Substantial evidence is more than a mere scintilla.  It means
> such relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation

marks and citations omitted).  In making its determination "a reviewing court must focus on the

---

10 To the extent Plaintiff attempts to create an issue with respect to Ascension's alleged conflict
of interest, said argument has previously been raised and rejected by this Court.  *See Vega v.
Ascension Health*, 997 F.Supp.2d 1000, 1009 (E.D. Mo. Feb. 6, 2014) ("As the Plan reflects,
benefits are paid by the Ascension Health Welfare Benefits Trust; claims determinations are
made by Sedgwick.  There can, therefore, be no inherent conflict of interest as the payor of
benefits does not make the determination of disability.").  This Court agrees with the reasoning
set forth in *Vega*, and holds there exists no conflict of interest here, and therefore an abuse of
discretion standard applies.  *See Kraus v. Ascension Health Long Term Disability Plan,* No.
4:15CV718 JMB, 2016 WL 4061880, at *10 (E.D. Mo. Jul. 29, 2016).

evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal quotation marks and citation omitted). Finally, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

## I.    Denial of Initial Short-Term Disability Benefits Claim

Upon consideration of the record before it, the Court cannot say that Sedgwick abused its discretion in its initial denial of STD benefits. As noted above, Plaintiff stopped working on or around May 19, 2017. When she notified Sedgwick of her claim for STD benefits on May 26, 2017, her listed medical condition was "unknown," although she reported leg pain, lower back pain and headaches. Plaintiff successfully submitted only psychologist Dr. Thrift's attending physician statement, as Dr. Ralston's was incomplete. While Dr. Thrift opined that Plaintiff suffered from generalized anxiety disorder and would be incapacitated for approximately six weeks, he failed to provide cognitive, emotional, or exam findings for review, despite Defendants' request for additional treatment information. Furthermore, Dr. Thrift had seen Plaintiff only once since her alleged onset of disability, and had not scheduled her for another appointment until more than one month later.

Based on the foregoing Sedgwick denied Plaintiff's claim for STD benefits, stating that Plaintiff's limited evidence was insufficient to demonstrate that Plaintiff suffered from a disability as defined by the STD Program. *See Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (citing *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (holding that providing only subjective medical opinions, which were unsupported by objective medical evidence, did not suffice to prove a claim for benefits)); *see also Prezioso v. Prudential Ins. Co. of America*, 748 F.3d 797, 806 (8th Cir. 2014) (same). Under these circumstances, the Court finds Sedgwick's decision to deny Plaintiff STD benefits was not an abuse of discretion, and thus even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." *Fletcher-Merrit*, 250 F.3d at 1180.

## II.    Denial Of Short-Term Benefits Appeal

Plaintiff appealed the denial of her STD benefits on or about July 7, 2017, and as part of her appeal she submitted additional medical evidence from visits with several doctors. Once Sedgwick received Plaintiff's appeal, including her updated medical documentation, it sent Plaintiff's complete claims file to Dane Street, which in turn remitted it to three separate IPAs for review. First Dr. Howard Grattan, M.D., board certified in physical medicine and rehabilitation and pain management, concluded that Plaintiff was not disabled from the ability to perform the regular, unrestricted duties of her occupation, as the clinical findings showed no evidence of neurological compromise such as motor weakness, altered sensation, abnormal reflexes, balance/gait impairment, musculoskeletal abnormalities, or diagnostic pathology to support impairment. (AH 411-12).[11] Second Dr. Manuel Melendez, M.D., board certified in

---

11 As noted above, prior to submitting his report Dr. Grattan unsuccessfully attempted to establish contact with Dr. Samuel Ralston, Dr. Brian O'Grady, Jared Collett, P.A. and Dr. Eliot Wickliff. (AH 409).

psychiatry, concluded that the clinical evidence did not support functional impairment for the relevant time frame, as Dr. Thrift's request of six weeks leave was not based on evidence of observable mental dysfunctions (and no change of treatment or referral to a higher level of care was made), and Dr. Ralston noted that most serious symptoms of depression were absent.  (AH 419=20).[12]  Finally Dr. Michelle Park, M.D., board certified in internal medicine, concluded after consulting with Dr. Samuel Ralston and Cinnamon, an assistant in Dr. Christopher Matlock's office[13], that from a cumulative perspective, Plaintiff had no functional impairment from the perspective of physical medicine and rehabilitation.  (AH 430-31).

In a letter dated September 26, 2017, Sedgwick affirmed the denial of benefits for the period of May 30, 2017, to Plaintiff's return to work date.  (AH 435-37).  Specifically, Sedgwick stated that its medical file review, together with the independent reviews of Drs. Grattan, Melendez and Park, did not support Plaintiff's inability to perform her own job.  (*Id.*).

"When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial."  *Johnson*, 437 F.3d at 814 (citation omitted).  Here, all three physicians reviewing Plaintiff's file concluded that she was not so disabled as to require STD benefits.  They did so after noting there was little or no objective evidence of impairment, leaving only Plaintiff's subjective, uncorroborated complaints as evidence of her ailments.  *See Id.*; *see also Prezioso*, 748 F.3d at 806.  Under these circumstances, the Court finds Sedgwick's decision to deny Plaintiff benefits was not an abuse of discretion, and thus again, even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator."  *Fletcher-Merrit*, 250 F.3d at 1180.  *See also Midgett*, 561 F.3d at 897-98

12 As noted above, prior to submitting his report Dr. Melendez unsuccessfully attempted to establish contact with Dr. Robert Thrift and Dr. Samuel Ralston.  (AH 416).
13 As noted above, prior to submitting her report Dr. Park was unable to establish contact with Dr. Eliot Wickliff or Dr. Robert Thrift.  (AH 427).

(holding the decision to deny the plaintiff's short-term disability claim was supported by substantial evidence, as the peer reviews "accurately represent[ed] [Plaintiff's] medical record and adequately address[ed] the evidence supporting her claim for disability," but "explained that these findings did not demonstrate that [Plaintiff] was unable to perform her job duties."); *Rittenhouse*, 476 F.3d at 632 (internal quotation marks and citation omitted) ("[The Plan's] decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

### III.   Denial Of Long-Term Disability Benefits

As noted above, on May 3, 2018, Plaintiff's counsel initiated an LTD claim. Sedgwick denied both the claim and Plaintiff's appeal, informing Plaintiff that because she was not approved for STD benefits for 180 days, she failed to satisfy the Plan's elimination period and thus was not eligible for LTD benefits. Based on the foregoing, Defendants assert in their Motion for Summary Judgement that Plaintiff is not entitled to LTD benefits because she failed to satisfy a condition precedent to receiving them. Upon consideration, the Court agrees.

The LTD Plan explains that the completion of a 180-day elimination period is necessary for a participant to seek LTD benefits. Plaintiff here does not argue that she has completed the elimination period. Since completion of the elimination period was necessary for the Plaintiff to seek LTD benefits, the Court will uphold Defendants' denial of LTD benefits based on Plaintiff's failure to satisfy a condition precedent. *See Presi v. Ascension Health Alliance*, No. 4:16CV1857 JCH, 2019 WL 1200347, at *14 (E.D. Mo. Mar. 14, 2019); *Rucker v. Ascension Health Long and Short Term Disability Plan*, No. 4:11CV2104 HEA, 2013 WL 5436611, at *11 (E.D. Mo. Sep. 27, 2013) (citation omitted) ("Finally, because plaintiff's disability status terminated effective July 22, 2010, Plaintiff did not meet the 181-day elimination period of continuous disability in order to become eligible for long term disability benefits. The decision

to deny Plaintiff long term disability benefits on account of her inability to meet the Plan's required elimination period was reasonable.").[14]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 44) is **GRANTED**, and Plaintiff's First Amended Complaint is **DISMISSED** with prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 42) is **DENIED**.

Dated this 10th Day of May, 2021.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

14 Plaintiff makes much of the fact that Defendants denied her claim for LTD benefits despite receiving notice of her award of Social Security Disability Benefits.  As noted by Defendants, however, a Social Security award does not constitute objective medical evidence.  Furthermore, "an ERISA plan administrator or fiduciary generally is not bound by a[n] SSA determination that a plan participant is disabled, even when the plan's definition of disabled is similar to the definition the SSA applied."  *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir. 2003) (internal quotation marks and citation omitted).